Steven M. Post, Esq.
Donna Marie Werner, Esq.
Aime Dempsey, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York 10177
(212) 351-4500
*Attorneys for Plaintiff Travelex Canada Ltd*



UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
TRAVELEX CANADA LIMITED,

                Plaintiff,

- against -

LEIGHANNA MORBEY and
AFEX-ASSOCIATED FOREIGN EXCHANGE, INC.

                Defendants.
------------------------------------------------------------X

JUDGE DANIELS

'07 CIV 9747

## COMPLAINT

Plaintiff Travelex Canada Limited ("Travelex"), by and through its attorneys Epstein Becker & Green, P.C., as and for its Complaint against Leighanna Morbey ("Morbey") and AFEX-Associated Foreign Exchange, Inc. ("AFEX")(collectively "Defendants), alleges as follows:

### NATURE OF THE ACTION

1. This is a proceeding to redress the unlawful solicitation by Travelex's former employee, Morbey, of Travelex's important clients with whom relationships were developed by Travelex at considerable time and expense, the unlawful retention and disclosure by Morbey of Travelex's confidential information to AFEX, and the use of that confidential information by Morbey and AFEX.

NY:2195819v1

2. Travelex is engaged in, among other things, the highly competitive business of the international foreign exchange of currency and global payments business. Travelex distinguishes itself from the market by finding tailored, sometimes unique, solutions to the foreign exchange issues of its clients. That process relies on relationships between Travelex and its clients that take months or years of significant investment and nurturing to develop.

3. Morbey came to Travelex in 2002 with little or no experience in the foreign exchange transaction industry. Once at Travelex, Morbey received extensive training in all aspects of the job of account manager. Morbey also was provided with a portfolio of customers and with extensive resources to assist her in servicing those customers and in increasing her customer base, which, as a result of Travelex's support, ultimately grew to over 300 customers. During her tenure at Travelex, Mobley also had exposure to and interaction with Travelex customers who were assigned to other account managers.

4. As a condition of her employment with Travelex, Morbey executed an Employment Agreement and an Agreement on Confidentiality and Non-Solicitation (the "Non-Solicitation Agreement") pursuant to which she agreed not to retain or disclose Travelex's confidential information and not to solicit Travelex's employees or customers for a term of one year following the termination of her employment with Travelex. These restrictions were meant to provide Travelex with some measure of protection, given its promise to employ Morbey and to invest in her by training her and providing her with a portfolio of clients; and to give Travelex a fair chance to retain customers in whom it has invested substantial resources.

5. Morbey explicitly agreed that the restrictions set out in the Non-Solicitation Agreement "are reasonable, fair and equitable in scope and duration, [and] are necessary to

protect the legitimate business interests of [Travelex] and are a material inducement to [Travelex] to enter into an employment relationship with [Morbey]."

6. On August 15, 2007, Morbey resigned from Travelex. Thereafter she moved to New York and began working with AFEX in a position substantially similar to the one she held at Travelex.

7. Prior to her resignation, Morbey printed out her contact list.

8. On information and belief, when she resigned, Morbey retained and took with her to her new employer, Travelex proprietary and confidential information, including Travelex's customer list. This was a direct violation of the Non-Solicitation Agreement. Within a short time of beginning her employment with AFEX, Morbey again blatantly breached the Non-Solicitation Agreement by soliciting Travelex's customers and by disclosing Travelex's confidential information, including its customer lists, to AFEX.

9. AFEX is or should be aware that Morbey is subject to a Non-Solicitation Agreement because such agreements are standard in the industry. Despite this, AFEX has tortiously interfered with Morbey's agreements with Travelex and with Travelex's contractual relationships with its clients by supporting Morbey's solicitation of Travelex's clients and by benefiting from the use of Travelex's confidential information.

## PARTIES

10. Plaintiff, Travelex, is a corporation organized under the laws of Ontario, Canada.

11. Defendant, AFEX, is a corporation organized under the laws of California, doing business in New York with a place of business at 575 Lexington Ave., New York, New York.

12. Defendant Morbey is an individual residing in the State of New York. On information and belief, Morbey is a resident of New York, New York.

## VENUE AND JURISDICTION

13. This is an action in diversity and this Court has jurisdiction pursuant to 28 U.S.C.A. §1332.

14. Venue is proper under 28 U.S.C.A. §1391 because all of the defendants reside or are domiciled in New York.

## BACKGROUND FACTS

15. Travelex and AFEX are competitors in the foreign exchange transactions industry.

16. Travelex is engaged in, among other things, the business of the international foreign exchange of currency and credits and the global payments business. Its clients are entities throughout North America who have occasion to do business in foreign currencies.

17. Travelex distinguishes itself from the market by finding tailored, sometimes unique, solutions to the foreign exchange issues of its clients. That process relies on relationships between Travelex and its clients that take months or years of significant investment and nurturing to develop.

18. The foreign exchange and global payments market is highly competitive. While there are numerous North American companies that have occasion to utilize foreign exchange transaction services, there are also dozens of companies equipped to provide at least some of those services, including virtually all banks.

19. Travelex operates by having a team of account managers learn the needs and businesses of their customers, so that they can suggest and support appropriate transactions when

necessary. The account managers also are responsible for following the foreign exchange markets so that they are ready with current information when customers call, and so that they can advise customers when market conditions are particularly favorable.

20. In addition, account managers are expected to maintain vigilance over proposed transactions, and to be intimately familiar with governing regulations, so they can identify and decline any transactions that are not legal or legitimate. Travelex trains its account managers in all of these areas of its business.

21. Other business entities offer at least some of the same basic services offered by Travelex, therefore, Travelex's market knowledge, customer relationships and reputation are the essence of whatever competitive advantage it can maintain. Travelex has risen to its present leading position due to its extensive customer base which is supported by its scrupulous regulatory compliance function and stellar reputation.

22. Travelex's business methods, including its customized approaches to unique customer issues, and software are highly confidential. Individual employees' access to Travelex's proprietary software is password-protected.

23. Travelex has spent substantial resources of time and money to develop its proprietary technology and client relationships in the precious metals and foreign exchange markets. In order to assist in the development and cultivation of favorable client relationships, Travelex has expended large sums of money to develop its leading position in the market, including those for formal and informal training of traders, investment in sophisticated telecommunications and computer hardware and software, development of business strategies, including pricing models, development and maintenance of a trained sales staff, acquisition and retention of customers, and the audit infrastructure necessary to identify and avoid illegal and

illegitimate transactions, which infrastructure includes annual re-accreditation for all employees on important compliance issues, thus maintaining Travelex's top-notch reputation in the industry.

### Hiring of Morbey by Travelex

24. Morbey was employed by Travelex as Regional Account Manager from September 3, 2002 until August 15, 2007.

25. Morbey's resume and employment application submitted to Travelex indicate that she previously worked in junior operations and administrative roles in some banks in the Toronto area. Morbey came to Travelex with little or no experience in the foreign currency and global payments business.

26. During her employment with Travelex, Morbey received training in all aspects of her job, including regulatory compliance, anti-money laundering and compliance training, specific telephone-based sales training, strategies on how to retain and grow her portfolio to increase overall portfolio, and instruction on how to identify potentially troublesome transactions, instruction on understanding each customer's unique needs and how to meet them, and training in watching the markets for conditions favorable for particular transactions.

27. Up to and through August 15, 2007, all of Morbey's knowledge and experience as an account manager in the foreign exchange and global payments business was obtained through her employment with Travelex. Morbey did not bring any prospective clients to Travelex.

28. At the time of her hire, Morbey was provided with a portfolio of customers by Travelex. She was taught how to expand her portfolio by increasing both the number of

customers in her portfolio and the number of services and transactions undertaken by each customer.

29. During her employment with Travelex, Morbey was supported by the services of Travelex's sales force, which made cold calls to, and scheduled meetings with, prospective clients, in order to enhance Morbey's customer base.

30. As a result of Travelex's support, training and assistance, Morbey developed a portfolio of over 300 clients while employed with Travelex.

31. Travelex also provided Morbey with a salary as well as commission-based compensation.

32. Through her interaction with Travelex's clients and other Travelex account managers, Morbey learned a great deal of valuable competitive information, including who participated in the market, individual client's styles and preferences, and Travelex's fee structures with different institutions and for different products.

33. Morbey also was exposed to, and had occasion to interact with, several of Travelex's customers who were assigned to other account managers.

34. Customer loyalty to Travelex depends upon a combination of the products and services offered by Travelex to meet customers' needs, and the customers' confidence that Travelex, through its individual account managers, can understand those needs and recommend appropriate products for particular transactions.

35. Travelex's account managers have frequent interactions with the key individuals at Travelex's customers, and tend to develop a personal rapport with them. When a particular account manager leaves the company, it takes some time for a customer to develop the same level of rapport with a new account manager.

### Morbey's Agreement on Confidentiality and Non-Solicitation

36. When Morbey was hired, she entered into an Agreement on Confidentiality and Non-solicitation with Travelex (the "Non-Solicitation Agreement").

37. Morbey's employment with Travelex was specifically conditioned on her execution of the Non-Solicitation Agreement.

38. Pursuant to that Non-Solicitation Agreement, Morbey expressly agreed that she would refrain from soliciting Travelex's clients or employees for one year after her employment terminated.

39. These restrictions were meant to provide Travelex with some protection, given its promise to employ Morbey and to invest in her by training her and providing her with a portfolio of clients.

40. The restrictions are designed to give Travelex a fair chance to retain customers in whom it has invested substantial resources when employees like Morbey, with whom the customers have interacted, leave and decide to compete with Travelex.

41. The Non-Solicitation Agreement has a section mandating the protection of confidential information, which states:

> **SECTION 1 – TRADE SECRETS AND CONFIDENTIAL INFORMATION**
>
> (1)  *"Confidential Information"* means any data or information, other than Trade Secrets, that is valuable to the Company and not generally known by, or generally made available by the Company to, the public or to competitors of the Company about or belonging to the Company and its subsidiaries (the "Associated Companies") and/or other entities to whom the Company may have an obligation to maintain information in confidence.
>
> (2)  *"Trade Secret"* means any technical or non-technical data, formula, pattern, compilation, program, device, method,

technique, drawing, process, financial data, financial plan, product plan, list of actual or potential customers or suppliers or other information similar to any of the foregoing, which (i) derives economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means, by other persons who can derive economic value from its disclosure or use, and (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

1.2    **Trade Secrets.** **Leighanna** shall hold in confidence all Trade Secrets of the Company or its Associated Companies that come into **Leighanna's** knowledge during **Leighanna's** employment with the Company and shall not disclose, publish or make use of at any time such Trade Secrets without the prior written consent of the Company for as long as the information remains a Trade Secret.

1.3    **Confidential Information.** **Leighanna** hereby agrees that **Leighanna** will hold in confidence all Confidential Information of the Company or of the Associated Companies that come into **Leighanna's** knowledge during **Leighanna's** employment with the Company and will not disclose, publish or make use of such Confidential Information without the prior written consent of the Company.

The following is a non-exhaustive list of data or information which is considered by the Company to be Confidential Information and must be treated as such by **Leighanna**:

(1)    Any information which the Company or any of the Associated Companies is bound by contract or other agreement with a third party to treat as Confidential Information;

(2)    Marketing strategies and plans;

(3)    Customer/client lists, lists of prospective customers/clients and details of contracts with or requirements of customers/clients;

(4)    Pricing strategies;

(5)    Discount rates and sales figures;

(6)   Information which is given to the Company or to **Leighanna** in confidence by clients, customers or suppliers, and which constitutes confidential information with respect to those entities; and

(7)   Any other information made available to **Leighanna** during the course of **Leighanna's** employment with the Company which is specifically identified to **Leighanna** as being Confidential Information.

42. The Non-Solicitation Agreement also requires that Morbey return all confidential and proprietary information when her employment with Travelex terminates. Specifically, section 1.4 states:

Upon the request of the Company and, in any event, upon the termination of **Leighanna's** employment with the Company, **Leighanna** shall deliver to the Company all memoranda, notes, records, manuals, samples or other documents, including all copies of such materials and all documentation prepared or produced in connection therewith, pertaining to the performance of **Leighanna's** services for the Company, the business of the Company or of the Associated Companies, or containing Trade Secrets or Confidential Information regarding the Company's business or the Associated Companies' business, whether made or compiled by **Leighanna** or furnished to **Leighanna** by virtue of **Leighanna's** employment with the Company.

43. Morbey's Non-Solicitation Agreement also provides, in section 2.1:

2.1   **Non Solicitation of Customers/Clients.** **Leighanna** hereby covenants with the Company that **Leighanna** will not, for period of one year following the termination of **Leighanna's** employment for whatever reason, solicit or attempt to solicit, on behalf of any corporation, partnership, venture or other business entity which competes with the Company in precious metal or foreign exchange transactions, the business of any customer/client of the Company with whom **Leighanna** dealt with on behalf of the Company during the one year prior to the last day of **Leighanna's** employment with the Company.