UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
TRAVELEX CANADA LIMITED,

                         Plaintiff,

                                      07-cv-9747 (GBD)(DF)

     -against-

LEIGHANNA MORBEY and
AFEX-ASSOCIATED FOREIGN EXCHANGE, INC.,

                         Defendants.

--------------------------------------------------------------------x

---

MEMORANDUM OF DEFENDANTS
LEIGHANNA MORBEY and
AFEX-ASSOCIATED FOREIGN EXCHANGE, INC.,
IN OPPOSITION OF ORDER TO SHOW CAUSE
FOR TEMPORARY RESTRAINTS AND PRELIMINARY INJUNCTION

---

CYRULI SHANKS HART & ZIZMOR LLP
Russell Shanks, Esq.
Jeffrey C. Ruderman, Esq.
Attorneys for Defendants
Leighanna Morbey and
AFEX-Associated Foreign Exchange, Inc.
420 Lexington Avenue-Ste 2320
New York, New York 10170
(212) 661-6800

TABLE OF CONTENTS

PAGE

I.  PRELIMINARY STATEMENT                                        1

II.  STATEMENT OF FACTS                                          2

III. ARGUMENT                                                    2

A.      TRAVELEX WILL NOT SUFFER IRREPARABLE HARM               4

    1.      KNOWLEDGE OF PLAINTIFF'S BUSINESS DOES
            NOT CONSTITUTE CONFIDENTIAL OR TRADE
            SECRETE INFORMATION SUFFICIENT FOR A
            FINDING OF IRREPARABLE HARM
                                                                 4

    2.      CUSTOMER IDENTITIES DO NOT
            CONSTITUTE CONFIDENTIAL OR TRADE
            SECRET INFORMATION SUFFICIENT FOR A
            FINDING OF IRREPARABLE HARM
                                                                 9

    3.      ANY POTENTIAL LOSS OF
            CUSTOMERS IS NOT IRREPARABLE AS
            TRAVELEX MAY BE COMPENSATED FOR
            MONETARILY
                                                                 11

B.      PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF
        SUCCESS ON THE MERITS OR A SUFFICIENTLY SERIOUS
        QUESTION GOING TO THE MERITS OF ITS CLAIMS TO MAKE
        THEM A FAIR GROUND FOR LITIGATION
                                                                 13

    1.      PUBLIC POLICY REQUIRES THE
            APPLICATION OF NEW YORK LAW FINDING
            THAT THE NON-SOLICITATION AGREEMENT
            IS NOT ENFORCEABLE
                                                                 13

    2.      THE CONFIDENTIALITY AGREEMENT IS
            UNENFORCEABLE UNDER ONTARIO LAW
            AS THERE WAS A SIGNIFICANT CHANGE IN
            MORBEY'S EMPLOYMENT FOLLOWING THE
            EXECUTION OF THE CONFIDENTIALITY
            AGREEMENT
                                                                 17

i

3.    THE CONFIDENTIALITY AGREEMENT
      IS UNENFORCEABLE UNDER ONTARIO LAW
      AS IT IS TOO BROAD
                                                        18

4.    IF THE CONFIDENTIALITY AGREEMENT IS
      UNENFORCEABLE MORBEY IS NOT
      RESTRICTED FROM SOLICITATION OF
      CUSTOMERS UNDER BOTH NEW YORK LAW
      AND ONTARIO LAW
                                                        20

5.    MERE CONTACT WITH CUSTOMERS DOES NOT
      CONSTITUTE SOLICITATION
                                                        22

6.    TRAVELEX CANNOT ESTABLISH A CLAIM FOR
      TORTIOUS INTERFERENCE AGAINST AFEX
                                                        23

C.    THE BALANCE OF HARDSHIPS WEIGHS IN
      FAVOR OF DENYING THE MOTION
                                                        24

IV. CONCLUSION                                          25

TABLE OF AUTHORITIES

                                                                    PAGE
General Motors Corp. v. Gibson Chem. & Oil Corp.,
786 F. 2d 105, 109 (2d Cir. 1986)                                    2

Omega Importing Corp. v. Petri-Kline Camera Co.,
451 F. 2d 1190 (2d Cir. 1971).                                       2

Buckingham Corp. v. Karp, 762 F.2d 257, 262 (2d Cir.1985)            2

Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir.1985)         3

Bell & Howell: Mamiya Co. v. Masel Supply Corp.,
719 F.2d 42, 45 (2d Cir.1983)                                        3

Tucker Anthony Realty Corp. v. Schlesinger,
 888 F.2d 969, 975 (1989);                                           3

Huntington v. Marsh, 884 F.2d 648, 651 (2d Cir.1989)
cert. denied, 494 U.S. 1004, 110 S.Ct. 1296 (1990)                   3

Jackson Dairy, Inc. v. H.T. Hood & Sons, Inc.,
596 F.2d 70, 72 (2d Cir.1979)                                        3

Consolidated Brands, Inc. v. Mondi, 638 F.Supp.
152, 155 (E.D.N.Y.1986)                                              3

Kaplan v. Board of Education, 759 F.2d 256, 259 (2d Cir.1985)        3

JSG Trading Corp. v. Tray-Wrap, Inc.,917 F.2d 75, 79 (2d Cir. 1990)  3

Woodling v. Garrett Corp., 813 F.2d 543, 552 (2d Cir.1987)           4

Lobel v. American Airlines, Inc., 192 F.2d 217, 219 (2d Cir.1951),
cert. denied, 342 U.S. 945, 72 S.Ct. 558 (1952)                      4

United Rentals (North America), Inc. v. Myers,
2003 WL 23507021 (D.Conn. 2003)                                      4

Nassau Sports v. Peters, 352 F.Supp. 870. (E.D.N.Y. 1972)            4

Production Resource Group, L.L.C. v. Oberman, 2
003 WL 22350939, *7 (S.D.N.Y. 2003)                              6, 11, 20

Reed, Roberts Assocs, Inc. v. Strauman, 40 N.Y.2d 303,
386 N.Y.S.2d 677 (1976)                                          6, 9, 14, 15, 21

Walter Karl, Inc. v. Wood, 137 A.D.2d 22, 28,
528 N.Y.S.2d 94 (2d Dep't 1988)                                 6, 15

Catalogue Serve. Of Westchester, Inc. v. Henry,
107 A.D.2d 783, 784, 484 N.Y.S.2d 615 (2d Dep't 1985)           6

Anchor Alloys, Inc. v. Non-Ferrous Processing Corp.,
39 A.D.2d 504, 507, 336 N.Y.S.2d 944 (2d Dep't 1972)            6

DataType Int'l, Inc. v. Puzio, 797 F.Supp 274, 283 (S.D.N.Y. 1992)    6

Imperial Sheet Metal Ltd. et. al. v. Landry and Gray Metal Products Inc.,
2007 NBCA 51                                                    7, 22

Starlight Limousine Service, Inc. v. Cucinella,
275 A.D.2d 704, 705, 713 N.Y.S.2d 195 (2d Dept.,2000)          8, 10

Ashland Mgt. v. Janien, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912 (1993)    8

Greenwich Mills Co. v. Barrie House Coffee Co.
91 A.D.2d 398, 402-403, 459 N.Y.S.2d 454 (2d Dept. 1983)       8

Imperial Chemical Industries Limited v. National Distillers & Chemical Corp.,
354 F.2d 459, 461 (2d Cir. 1965)                               8

Hudson Hotels Corp. v. Choice Hotels Int'l,
995 F.2d 1173, 1176 (2d Cir. 1993)                             9

Ecolab, Inc. v. Paolo, 753 F. Supp 1100, 1111-12 (E.D.N.Y. 1991)    9, 13

Lehman v. Dow Jones & Co., 783 F.2d 285, 298 (2d Cir. 1986)    9

Q-Co Indus., Inc. v. Hoffman, 625 F. Supp 608, 617 (S.D.N.Y. 1985)    9

A.H. Emery Co., v. Marcan Prods Corp., 389 F.2d 11, 16 (2d Cir. 1968)    9
cert. denied, 393 U.S. 835, 89 S.Ct. 109 (1968

Ability Search, Inc. v. Lawson, 556 F. Supp. 9, 15 (S.D.N.Y. 1981)
aff'd 697 F.2d 287 (2d Cir. 1982                                10

Abraham Zion Corp. v. Lebow, 593 F.Supp. 551, 564 (S.D.N.Y. 1984)
 aff'd 761 F.2d 93 (2d Cir. 1985)                              10

Zurich Depository Corp. v. Gilenson,
12 A.D.2d 443, 444, 503 N.Y.S.2d 415 (2d Dep't 1986)          10

Barton Insurance Brokers Ltd. v. Irwin (1999),
63 B.C.L.R. (3d) 215 (B.C.C.A.)          10

In re Golden Distributors, Ltd., 134 B.R. 750, 759, (Bankr.S.D.N.Y 1991)          11, 12

Consolidated Brands, Inc. v. Mondi, 638 F.Supp. 152, 155 (E.D.N.Y. 1986)          12

Ticor Title Ins. Co. v. Cohen, 1998 WL 355420, at *3 (S.D.N.Y. 1998),
aff'd 159 F.3d 774 (2nd Cir. 1998)          12

In re Alert Holdings, Inc., 148 B.R. 194 (Bankr.S.D.N.Y. 1992)          12

Geritrix Corporation v. Dermarite Industries, LLC,
910 F.Supp. 955, (S.D.N.Y. 1996)          13

Klaxon Co. v. Stentor Electric Mfg. Co.,  313 U.S. 487, 497,
61 S.Ct. 1020, 85 L.Ed. 1477 (1941)          13

Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.,
230 F.3d 549, 556 (2d Cir.2000)          13

Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir. 1998)          14

Matter of Allstate Ins. Co. & Stolarz, 81 N.Y.2d 219,
597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)          14

Cargill, Inc. v. Charles Kowsky Resources, Inc.,
949 F.2d 51, 55 (2d Cir. 1991)          14, 15

Woodling v. Garrett Corp., 813 F.2d 543, 551 (2d Cir. 1987)          14

Haag v. Barnes, 9 N.Y.2d 554, 559, 216 N.Y.S.2d 65 (1961)          14

Walter E. Heller & Co. v. Video Innovations, Inc.,
730 F.2d 50, 52 (2d Cir.1984).          15

Arc-Com Fabrics, Inc. v. Robinson,
149 A.D.2d 311, 539 N.Y.S.2d 363 (1st Dept.,1989)          15

Purchasing Associates, Inc. v. Weitz,  13 N.Y.2d 267, 272,
246 N.Y.S.2d 600, 196 N.E.2d 245          15

American Broadcasting Cos. v. Wolf, 52 N.Y.2d 394, 404,
438 N.Y.S.2d 482, 420 N.E.2d 363)                                               15

Investor Access Corp. v. Doremus & Co., Inc., 186 A.D.2d 401,
402, 588 N.Y.S.2d 842 (1st Dept 1992)                                          15

Business Networks of New York, Inc. v. Complete Networks Solutions, Inc.,
265 A.D.2d 194, 696 N.Y.S.2d 433                                                16

Leo Silfen v. Cream, 29 N.Y.2d 387, 394 (1972)                              16, 20

AM Medical Communications Group v. Kilgallen,
261 F.Supp.2d 258, 264 (S.D.N.Y. 2003)                                          16

Wells Fargo Asia Ltd. v. Citibank, N.A., 936 F.2d 723, 726 (2d Cir.1991)       17

J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Ltd.
37 N.Y.2d 220, 227, 371 N.Y.S.2d 892 (1975)                                     17

Sawko v. Fosco Canada Ltd. (1987), 15 CCEL 309 (Ont. Dist. Ct.)             17, 18

Lyonde v. Canadian Acceptance Corp., (1983), 3 CCEL 220 (Ont. H.C.J.)          18

Sharpe v. Computer Innovations Distribution Inc. (1993) 1 CCEL (2d) 28)        18

Madison Chemical Industries Ltd. v. Walker, [2000] O.J. No. 1125               18

Columbia Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp.,
42 N.Y.2d 496, 499, 369 N.E.2d 4 (1977)                                         18

Syntax Systems Ltd. v. Mid-Range Computer Group Inc.
2003 CarswellOnt 3513, O.J. No. 3684                                    19, 20, 22, 23

Madison Chemical Industries Ltd. v. Walker,
4 CCEL (3d) 133 [2000] O.J. No. 1125                                            20

947535 Ontario Ltd. (c.o.b) H&R Block v. Jex,
[2003] O.J. No. 3290                                                           20

International Corona Resources Ltd. v. LAC Minerals Ltd..
 [1989] 2 S.C.R. 574                                                           21

Frame v. Smith, [1987] 2 S.C.R. 99                                             21

R.W. Hamilton v. Aeroquip Corp. (1988), 65 O.R. (2d) 345 (Ont. H.C.)           21

Sure Grip Fasteners Ltd. v. Allgrade (1993),
45 CCEL 276 (Ont. Ct. Gen. Div.)                                    21

RBC Dominion Securities v. Merrill Lynch, 2007 CarswellBC 46        22

IT/Net Inc. v. Doucette (2005), 5 B.L.R. (4th) 71 (Ont. S.C.J.)    22

Atlantic Business Interiors Ltd. v. Hipson [2005] N.S.J. 33        22

Dole v. United Steelworkers of America, 4
94 U.S. 26, 50, 110 S.Ct. 929 (1990)                               23

Imtrac Industries, inc. v. Glass export Company Ltd.,
1996 WL 39294 *7 (S.D.N.Y.)                                        23

Enercomp, Inc. v. McCorhill Publishing, Inc.,
873 F.2d 536 (2d Cir.1989)                                        23

American Protein Corporation v. AB Volvo,
844 F.2d 56, 63 (2d Cir. 1988)                                    23

Felsen v. Sol Café Mfg. Corp., 24 N.Y.2d 682, 686-87,
301 N.Y.S.2d 610 (1969)                                           24

Howard Systems International, Inc. v. IMI Systems Inc.,
192 A.D.2d 371, 596 N.Y.S.2d 48 (1st Dept 1993)                   24

Consolidated Brands, Inc. v. Mondi, 638 F.Supp 152 (E.D.N.Y.1986)  25

Iron Mountain Information Management, Inc. v. Taddeo,
455 F.Supp.2d 124, 141 (E.D.N.Y. 2006)                            25

## I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff, Travelex Canada Limited ("Travelex"), commenced this action by Order to Show Cause against Leighanna Morbey ("Morbey") and AFEX-Associated Foreign Exchange, Inc. ("AFEX") seeking a preliminary injunction prohibiting Morbey from soliciting Travelex's customers and using Travelex's business information in connection with her employment at AFEX alleging that Morbey is constrained by the terms of an Agreement on Confidentiality and Non-Solicitation (the "Confidentiality Agreement"). Travelex is not entitled to the preliminary injunction as it is not likely to succeed on the merits, there is no irreparable harm and the balance of hardships favors defendants.

Travelex is part of the Travelex Group, a British conglomerate, one of the largest foreign exchange companies, transacting business worldwide out of five continents. Travelex Group employs over 6,000 people, services over 35,000 commercial customers and has just completed the acquisition of Ruesch International, one of its largest competitors.  In 2005 it generated over £526,000,000.00 resulting in more than £50,000,000.00 in profit.

Morbey had been employed by Travelex as a corporate trader since 2003 handling customers' foreign exchange needs and resigned in August 2007 with a final compensation of less than $100,000.00 CAD.  The Confidentiality Agreement, which was not executed in connection with the corporate trader position, purports to prohibit Morbey from soliciting certain customers of Travelex and from divulging Travelex's alleged trade secrets and confidential information. Morbey has not used or divulged any trade secret or confidential information and is only doing business with a handful of Travelex customers with whom she has a personal relationship.

The Confidentially Agreement, though, is unenforceable under both Ontario and New York law as it was not executed in connection with her corporate trader position and it is overly

1

broad, seeking to prohibit solicitation of thousands of non-exclusive customers with which she had no significant contact. The non-solicitation provision as also unenforceable under New York law as the customer list is not a trade secret since the customer identities are readily available on the open market.

Travelex will also not be irreparably harmed by solicitation of its customers as the customer names do not constitute trade secrets and any potential losses, which can be compensated for monetarily, are insignificant to a company the size of Travelex.

## II.    STATEMENT OF FACTS

In the interests of brevity and judicial economy, and in lieu of a redundant recitation of the relevant facts, the Court is respectfully referred to the affidavit of Leighanna Morbey, attached to and made a part hereof.

## III.    ARGUMENT

To obtain an order for temporary injunctive relief in this Circuit, plaintiff must establish that it will suffer immediate injury if the injunction does not issue, and either (1) a likelihood of success on the merits at the trial of the action, or (2) sufficiently serious questions going to the merits of its claims to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor. General Motors Corp. v. Gibson Chem. & Oil Corp., 786 F. 2d 105, 109 (2d Cir. 1986); Omega Importing Corp. v. Petri-Kline Camera Co., 451 F. 2d 1190 (2d Cir. 1971).

The Second Circuit has repeatedly stressed the importance of a showing of irreparable harm by the movant. "[I]nequitable conduct alone cannot justify the entry of a preliminary injunction.   The linchpin of such interim relief is that threatened irreparable harm will be prevented by that injunction." Buckingham Corp. v. Karp, 762 F.2d 257, 262 (2d Cir.1985). "'Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a

demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' " Citibank, N.A. v. Citytrust, 756 F.2d 273, 275 (2d Cir.1985) (quoting Bell & Howell: Mamiya Co. v. Masel Supply Corp., 719 F.2d 42, 45 (2d Cir.1983)).

The Second Circuit has consistently stressed that in order to be deemed "irreparable," so as to warrant the granting of injunctive relief, the harm alleged by the movant "must be one requiring a remedy of more than mere monetary damages.   A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (1989); see also Huntington v. Marsh, 884 F.2d 648, 651 (2d Cir.1989), cert. denied, 494 U.S. 1004, 110 S.Ct. 1296 (1990); Jackson Dairy, Inc. v. H.T. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979) ("irreparable injury means injury for which a monetary award cannot be adequate compensation.").

The gravaman of Travelex's allegation of irreparable harm is that the potential loss of customers due to solicitation by defendant Morbey would result in immeasurable loss of client relationships, market goodwill, competitive standing and confidential and proprietary information.  Travelex's use of these "catchphrases" without sufficient basis to support these alleged losses cannot support injunctive relief.  "To establish irreparable harm, plaintiffs must demonstrate 'an injury that is neither remote nor speculative, but actual and imminent.' " Tucker Anthony, supra, 888 F.2d at 975, (quoting Consolidated Brands, Inc. v. Mondi, 638 F.Supp. 152, 155 (E.D.N.Y.1986)); accord Kaplan v. Board of Education, 759 F.2d 256, 259 (2d Cir.1985).  It is not sufficient for a movant to demonstrate merely the possibility of irreparable harm.  "An applicant for a preliminary injunction must show that it is likely to suffer irreparable harm if equitable relief is denied." JSG Trading Corp. v. Tray-Wrap, Inc.,917 F.2d 75, 79 (2d Cir. 1990).

The standard that Travelex must meet is extremely high.   In the instant cases, Travelex has failed to demonstrate the requisite irreparable harm, and thus the instant motion for injunctive relief must be denied.  Travelex has also failed to satisfy the other remaining elements necessary in seeking injunctive relief.

## A.    TRAVELEX WILL NOT SUFFER IRREPARABLE HARM

### 1.    KNOWLEDGE OF PLAINTIFF'S BUSINESS DOES NOT CONSTITUTE CONFIDENTIAL OR TRADE SECRET INFORMATION SUFFICIENT FOR A FINDING OF IRREPARABLE HARM

In an action alleging irreparable harm arising from a former employee's alleged use or dissemination of the employer's trade secrets or confidential information, New York courts, analyzing irreparable harm, must first determine if such information constitutes a trade secret or confidential information.  A request for injunctive relief in a "conflicts-of-law" context is procedural and New York courts will look to laws of the forum state, New York. Woodling v. Garrett Corp., 813 F.2d 543, 552 (2d Cir.1987) citing Lobel v. American Airlines, Inc., 192 F.2d 217, 219 (2d Cir.1951), cert. denied, 342 U.S. 945, 72 S.Ct. 558 (1952).  The issue of whether the information constitutes a trade secret or confidential information, as applied to the irreparable harm analysis, is also procedural.  Hence we apply New York law to reach such determination. (See United Rentals (North America), Inc. v. Myers, 2003 WL 23507021 (D.Conn. 2003) (applying Connecticut law to Louisiana contract to determine of irreparable harm exists)(See Nassau Sports v. Peters, 352 F.Supp. 870. (E.D.N.Y. 1972) (applying New York law to Massachusetts contract in connection with irreparable harm argument)

Travelex has alleged that Morbey's use or dissemination of the information and knowledge she had gained as an employee of Travelex would result in irreparable harm as they are deemed trade secrets or confidential and are protected by the Confidentiality Agreement. Under New York law, though, if the information sought to be protected does not rise to the level

4

of trade secret or confidential information no irreparable harm will be found.  Travelex has failed to meet its burden.

In support of its motion Travelex offers Rhonda Power's ("Power") affidavit which provides a vague reference that "Morbey learned a great deal of valuable competitive information, including who participated in the market, individual corporation's styles and preferences, and Travelex's fee structures with different institutions and for different products."(¶ 14) Such information does not necessitate trade secret protection.

The names of the companies that participate in the foreign exchange market is not competitive confidential information.  As noted by Morbey, the sales generated by Travelex and AFEX are often made by obtaining available marketing customer lead lists which note thousands of users of foreign exchange services.  Every foreign exchange company, including AFEX, has access to this same information and provides this to its employees so that they may generate leads and sales.

Power's reference to knowledge of its customers' styles and preferences provide no understanding as to what those styles or preferences are or how they may be used to such a great advantage.  Morbey describes the styles and preferences as generally clerical in nature, learned easily and quickly, and have little to do with the customer's selection of a foreign exchange company.  The most important factor a customer considers in trading with a foreign exchange company is price.  Even customer rapport will only get Travelex the ability to quote on a trade, with the customer often choosing the lowest quote from among the various foreign exchange companies.

As for the fee structures, Power fails to explain how Travelex's fee structures are unique or are used to maintain a competitive advantage.  As described by Morbey, Travelex's fee structure, as is the structure of all foreign exchange companies, is to obtain the highest margin on each transaction without sacrificing the client's continued use of the foreign exchange company.  Since all foreign exchange companies are buying and selling currency on the same market at the

same price, it is only the varying margin or commission each foreign exchange company charges that will affect the price to customers.

Therefore, most foreign exchange customers will contact several of the foreign exchange companies with whom they do business to get the best rate for the particular transaction. Each foreign exchange company, including Travelex, and the particular corporate trader, will vary the margin, even to the same customer, based upon it own needs at that time in making the sale and anticipating what the other foreign exchange companies will charge on that particular transaction. Morbey uses her knowledge of the industry and the flexibility of now working for a smaller, more aggressive foreign exchange company to her advantage, not knowledge she gained from Travelex.

To the extent that Morbey has any general knowledge of Travelex's business operations, such "'knowledge of the intricacies of [a former employer's] business operation' is not a protectable interest sufficient to justify enjoining the employee 'from utilizing [her] knowledge and talents in this area'". Production Resource Group, L.L.C. v. Oberman, 2003 WL 22350939, *7 (S.D.N.Y. 2003) quoting Reed, Roberts Assocs, Inc. v. Strauman, 40 N.Y.2d 303, 386 N.Y.S.2d 677 (1976). Nor will pricing which amounts to general skills and knowledge that is common in the industry. Production Resource Group, L.L.C at 14 citing Reed, Roberts Assocs. See Walter Karl, Inc. v. Wood, 137 A.D.2d 22, 28, 528 N.Y.S.2d 94 (2d Dep't 1988) (where information sought to be protected consists of customer's needs and desires as recalled by the employee, use of such information will not be enjoined); Catalogue Serve. Of Westchester, Inc. v. Henry, 107 A.D.2d 783, 784, 484 N.Y.S.2d 615 (2d Dep't 1985)("'remembered information as to specific needs and business habits of particular customers is not confidential'")(quoting Anchor Alloys, Inc. v. Non-Ferrous Processing Corp., 39 A.D.2d 504, 507, 336 N.Y.S.2d 944 (2d Dep't 1972); DataType Int'l, Inc. v. Puzio, 797 F.Supp 274, 283 (S.D.N.Y. 1992) ("knowledge of the intricacies of [plaintiff's] business operation … does not qualify for protection as a trade secret". Quoting Reed, Roberts Assocs, at 309).

Canadian courts hold similarly. See Imperial Sheet Metal Ltd. et. al. v. Landry and Gray Metal Products Inc., 2007 NBCA 51 at paras. 4 and 33 wherein the court held that knowledge of the special needs and requirements of each customer and the means of servicing those needs did not qualify as confidential information.  That court stated that a former employee is entitled to exploit freely the general skills and knowledge acquired as a result of the employment relationship, so long as that knowledge is a product of his or her memory unaided by the employer's documentation.

Power's affidavit continues with allusions to Travelex's tailored, sometimes unique, solutions to foreign exchange issues of its clients. (¶4) Travelex claims that its business methods, including customized approaches to unique customer issues, and proprietary customer management and customer facing systems are highly confidential.  (¶7)  These conclusory assertions are unsupported by any specifics.  Travelex fails to explain what about its methods, systems and approaches make them proprietary or unique, who uses them, how they were implemented by Morbey in her employment or how they may be improperly used by Morbey in connection with her new employment.

Other than these general allegations of confidentiality, the balance of Power's affidavit and memorandum discusses, repetitively, the non-specific efforts that Travelex used to train Morbey and generally operate its business.  In describing the substantial resources Travelex uses to develop proprietary technology and client relationships, Travelex notes the training of account managers, sophisticated telecommunications and computer hardware and software, development of business  strategies, pricing models, training of staff, audits of infrastructure to identify illegal transactions, and compliance and accreditation of employees ¶8.

None of these facts pertain to the issues of this case.  The money Travelex spends to conduct its business has no bearing on whether it has specific confidential and proprietary

7

information pertaining to its customers or its business operations that would justify restraining Morbey's customer contact.

While Travelex alleges that its information is so highly confidential that it requires its employees to sign a non-disclosure agreement, it fails to describe any efforts it takes to ensure that such information is kept confidential.  In fact, as described by Morbey, Travelex employees frequently provide potential customers with the names of existing customers, or "drop names", so as to gain respectability.  Travelex has provided absolutely no basis for this Court to find that the information it seeks to protect is of a confidential nature whatsoever.  Starlight Limousine Service, Inc. v. Cucinella, 275 A.D.2d 704, 705, 713 N.Y.S.2d 195 (2d Dept.,2000) citing Ashland Mgt. v. Janien, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912 (1993) ("[A] trade secret must first of all be secret").

Despite Travelex's self-serving Confidentiality Agreement defining every aspect of its business as a trade secret or confidential, a court sitting in New York will not find irreparable harm unless the information actually constitutes a trade secret or is confidential. Greenwich Mills Co. v. Barrie House Coffee Co. 91 A.D.2d 398, 402-403, 459 N.Y.S.2d 454 (2d Dept. 1983).  Even a finding of trade secret status does not, in and of itself, establish irreparable harm by its disclosure as such determination is still relegated to the discretion of the Court.  Imperial Chemical Industries Limited v. National Distillers & Chemical Corp., 354 F.2d 459, 461 (2d Cir. 1965).

As Travelex has not adequately described the information that Morbey should be restrained from divulging, or why, New York will not find irreparable harm for disclosure of the general information sought to be restrained herein.

2.    **CUSTOMER IDENTITIES DO NOT CONSTITUTE CONFIDENTIAL OR TRADE SECRET INFORMATION SUFFICIENT FOR A FINDING OF IRREPARABLE HARM**

New York courts will not find irreparable harm in connection with former employees contacting the customers of its former employee unless the information constitutes a trade secret.

A trade secret "'may consist of any formula, pattern, device or compilation of information [that] is used in one's business, and [that] gives [the owner] an opportunity to obtain an advantage over competitors who do not know or use it.'" Hudson Hotels Corp. v. Choice Hotels Int'l, 995 F.2d 1173, 1176 (2d Cir. 1993) (quoting Restatement of Torts §757 comment b (1939).

In determining whether information constitutes a trade secret, New York courts have considered the following factors:  (1) the extent to which the information is outside the business; (2) the extent to which the information is known to the employees and others involved in the business; (3) the extent that measures are taken to guard the secret of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could properly be acquired or duplicated by others.  Ecolab, Inc. v. Paolo, 753 F. Supp 1100, 1111-12 (E.D.N.Y. 1991).

While the most important element is the necessity of secrecy, (Lehman v. Dow Jones & Co., 783 F.2d 285, 298 (2d Cir. 1986)), "[t]he rule is only that a 'substantial element of secrecy must exist and this means so much that, except by use of improper means, there would be difficulty in acquiring the information'".  Q-Co Indus., Inc. v. Hoffman, 625 F. Supp 608, 617 (S.D.N.Y. 1985) (quoting A.H. Emery Co., v. Marcan Prods Corp., 389 F.2d 11, 16 (2d Cir. 1968) cert. denied, 393 U.S. 835, 89 S.Ct. 109 (1968).  Where, however, the names of the former customers' names are readily discoverable through public sources, "trade secret protection will not attach and their solicitation by the former employee will not be enjoined.  Reed, Roberts Assocs at 308.

Morbey's description of the method by which customers are obtained by Travelex establishes that the list deserves no trade secret status and, hence, its use will not constitute irreparable harm.  Notably, when Travelex describes the "great efforts" it takes to generate sales and obtain customers it has nothing to offer except its account managers' "cold call" efforts. These types of leads are available on the open market.  There is no secret in identifying the pool of potential customers and no great efforts taken in soliciting and maintaining those customers and, therefore, it is not entitled to trade secret status.  Ability Search, Inc. v. Lawson, 556 F. Supp. 9, 15 (S.D.N.Y. 1981) aff'd 697 F.2d 287 (2d Cir. 1982) (a former employee "may solicit customers of his former employer who are openly engaged in the business or whose identity is readily or equally available to him".)  Starlight Limousine Service, supra, ( Information which can be acquired without extraordinary effort from non confidential sources are not entitled to trade secret protection despite expenditure of time and money in compiling customer list.)[1]

As the allegations of Morbey's downloading the actual customer contact information is without basis, no trade secret status will be applied to the customers that Morbey was able to contact simply by entering their names on the internet via the Google search engine.  Abraham Zion Corp. v. Lebow, 593 F.Supp. 551, 564 (S.D.N.Y. 1984) aff'd 761 F.2d 93 (2d Cir. 1985) (employee who contacted ex employer's retail customers and suppliers from memory based on previous personal associations with them did not misappropriate confidential, customer information.)  Also see Zurich Depository Corp. v. Gilenson, 12 A.D.2d 443, 444, 503 N.Y.S.2d 415 (2d Dep't 1986) ("The mere recollection of [customer] information as a result of casual memory is not actionable").  The Canadian Courts In Barton Insurance Brokers Ltd. v. Irwin (1999), 63 B.C.L.R. (3d) 215 (B.C.C.A.)  held similarly stating that former employees are entitled to recollect with the aid of a directory the names of people he/she had formerly dealt with and to solicit their business.

---

[1] The definition of Trade Secret in Section 1.1(2) of the Travelex Confidentiality Agreement, limits trade secrets to those items which are not readily ascertainable by proper means.  Hence, if they are ascertainable by proper means, as described herein, they would not be a trade secret under the Confidentiality Agreement.

Since the identities of Travelex's customers do not constitute a trade secret under New York or Ontario law, this Court, applying the procedural laws of New York, cannot not find irreparable harm arising from their use or disclosure.

**3.    ANY POTENTIAL LOSS OF CUSTOMERS IS NOT IRREPARABLE AS TRAVELEX MAY BE COMPENSATED FOR MONETARILY**

Travelex has failed to provide evidence establishing that any possible, or actual, loss of customers would cause irreparable harm. While Travelex alludes to vague losses of goodwill or reputation, it fails to provide any details as to the magnitude of possible losses which would support a claim of irreparable harm.

Travelex's losses are easily calculable. Lost "goodwill" or lost sales following the one-year restriction is irrelevant. The customers at issue have no exclusive arrangement with Travelex. They often use various foreign exchange companies depending on the applicable margin they may be quoted at any particular time and may not place any orders through Travelex for the coming year or for any year thereafter. Travelex's purported potential losses can easily be established by examining Travelex's lost profits for the one-year period in question.

Even allowing for Travelex's claim of lost future business, one could still calculate the possible lost business by extrapolating appropriate additional lost profits. Such calculable damages do not constitute irreparable harm. Production Resource Group, L.L.C, supra at *8. (no irreparable harm when lost profit during period in question can be calculated)

In re Golden Distributors, Ltd., 134 B.R. 750, 759, (Bankr.S.D.N.Y 1991) the court denied injunctive relief when the losses sustained by the debtor, after its vice president left its employ for a competitor taking all of the Rhode Island sales staff, resulted in a reduction of sales in Rhode Island of 50% and increased sales to the competitor of over $400,000.00. The court found no irreparable harm in that the debtor "may be compensated adequately by an award of

11

money damages which would cover past losses and the loss of future profits directly attributable to [the former vice-president's] breach of his fiduciary duty."

The type of actions alleged against defendants herein, and the possible losses, are insignificant in comparison to those in In re Golden Distributors. While Travelex alleges potential losses of hundreds of thousands of dollars, it provides not one specific example as to how such losses would be calculated nor why they cannot be calculated.

Further, any possible losses would be infinitesimal in relation to Travelex's total operation. Travelex's website notes that it is part of the "Travelex Group" which operates in five continents, employs over 6,000 people, services over 35,000 commercial customers and has just completed the acquisition of Ruesch International, one of its largest competitors. In 2005 the Travelex Group, a British conglomerate, generated over £526,000,000.00 resulting in more than £50,000,000.00 in profit. It is absurd for Travelex to suggest that Morbey's solicitation would result in irreparable harm to Travelex. The "sound precept that 'equity should not intervene where there is an adequate remedy at law.' is well known and honored in this Circuit." Consolidated Brands, Inc. v. Mondi, 638 F.Supp. 152, 155 (E.D.N.Y. 1986) (Finding that the "loss of business…is a quantifiable injury' and plaintiff who had been in "business for many years…could undoubtedly convert a loss of 25% of its customers for a given period into a dollar figure. At 155.)

The New York cases cited by Travelex here are inapposite. In each of those cases the court was faced by a much more grievous action than the actions alleged herein, with significantly greater consequences. In Ticor Title Ins. Co. v. Cohen, 1998 WL 355420, at *3 (S.D.N.Y. 1998), aff'd 159 F.3d 774 (2nd Cir. 1998) the former employee was a high-level executive earning a salary of $600,000.00 annually plus commission. When he left the employ of Ticor he took the majority of its customers. In re Alert Holdings, Inc., 148 B.R. 194 (Bankr.S.D.N.Y. 1992) concerned a non-compete provision in connection with the sale of the business, not an employment agreement, wherein the seller went back into business and used

12

false advertising in soliciting the former customers.  In Ecolab, Inc. v. Paolo, supra, one of the defendants/former employees had also previously sold his business to plaintiff and left its employ soliciting the very same customers he sold the plaintiff.  The other defendants had been found to have actually taken plaintiff's customer list, which the court found was obtained with great effort and was deemed confidential.  None of these cited cases is applicable in assessing the consequences of solicitation of less than two tenths of one (0.2%) percent of the plaintiff's customers by a low-level employee which potential losses, according to Travelex, amount to no more than nine-tenths of one (0.9%) percent of Travelex's revenue.

The Court should note the distinction between a contention that one is disseminating alleged trade secrets as opposed to using them to lure customers to a new competitor.  In Geritrix Corporation v. Dermarite Industries, LLC, 910 F.Supp. 955, (S.D.N.Y. 1996), the court found trade secrets used to lure away customers, rather that dissemination of trade secrets, simply results in the possible loss of sales to a competitor and refused to grant injunctive relief as they are compensable monetarily. Geritrix Corporation at 966 citing 4 Rudolf Callmann, The Law of Unfair Competition, Trademarks and Monopolies §22.37, at 279 (1995).

As any possible losses by Travelex can be adequately compensated monetarily, and no irreparable harm should be found.


**B.    PLAINTIFF CANNOT ESTABLISH A LIKELIHOOD OF SUCCESS ON THE MERITS OR A SUFFICIENTLY SERIOUS QUESTION GOING TO THE MERITS OF ITS CLAIMS TO MAKE THEM A FAIR GROUND FOR LITIGATION**

**1.    PUBLIC POLICY REQUIRES THE APPLICATION OF NEW YORK LAW FINDING THAT THE NON-SOLICITATION AGREEMENT IS NOT ENFORCEABLE**

In this diversity action, the Court must apply the law of the forum state, New York, to determine the choice-of-law. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (cited in Hartford Fire Ins. Co. v. Orient Overseas Containers

13

Lines (UK) Ltd., 230 F.3d 549, 556 (2d Cir.2000)). "In New York …the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." Curley v. AMR Corp., 153 F.3d 5, 11 (2d Cir. 1998) (citing Matter of Allstate Ins. Co. & Stolarz, 81 N.Y.2d 219, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993)). "It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis." Id.

New York will enforce post-employment restrictive covenants that are "reasonable in time and area, necessary to protect the employer's legitimate interest, not harmful to the general public and not unreasonably burdensome to the employee." Reed, Roberts Assoc, supra at 307. Similarly, Ontario courts will deem a restrictive covenant enforceable only if it (i) protects a legitimate proprietary interest; (ii) is reasonable in terms of duration and geographic scope; (iii) is overall fair to both parties; and (iv) the covenant is not contrary to the public interest.

While both jurisdictions appear to have similar approaches, in connection with a restrictive covenant not to solicit, New York has limited the employer's proprietary legitimate interests to those services which are unique or extraordinary or which prevent the disclosure or use of trade secrets of confidential information. Reed, Roberts Assoc, Inc. supra at 308. Ontario's case law pertaining to son-solicitation agreements, though, is in a state of development and its application to this situation is not as clear, although it appears that Ontario law would not be as favorable to the employee and, as such, a conflict exists. As a result of the conflict, to the extent that the Confidentiality Agreement is valid, the Court must first look to the choice-of-law provision contained therein which specifies application of the law of Ontario, Canada.

While New York courts will generally defer to the parties choice of law provision, Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51, 55 (2d Cir. 1991), they are not bound to do so if application of the foreign law will violate fundamental state policy, (Cargill at 55 citing Woodling v. Garrett Corp., 813 F.2d 543, 551 (2d Cir. 1987)), or New York has more significant contact with the matter in dispute, (Cargill at 55 citing Haag v. Barnes, 9 N.Y.2d 554,

559, 216 N.Y.S.2d 65 (1961)).  The parties' actions may also act as a waiver of the choice of law provision. Cargill at 55 citing Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52 (2d Cir.1984).

New York maintains "powerful considerations of public policy which militate against sanctioning the loss of a [person's] livelihood". Arc-Com Fabrics, Inc. v. Robinson, 149 A.D.2d 311, 539 N.Y.S.2d 363 (1st Dept.,1989) quoting Purchasing Associates, Inc. v. Weitz, 13 N.Y.2d 267, 272, 246 N.Y.S.2d 600, 196 N.E.2d 245.  Accord Reed, Roberts Associates, Inc. supra at 307.  New York courts have found that "the general public policy favoring robust and uninhibited competition should not give way merely because a particular employer wishes to insulate himself from competition" Walter Karl, Inc. supra at 29, 528 N.Y.S.2d 94 (2d Dept.,1988) quoting ( American Broadcasting Cos. v. Wolf, 52 N.Y.2d 394, 404, 438 N.Y.S.2d 482, 420 N.E.2d 363).

To the extent that Ontario law would enforce these non-solicitation provisions, against New York public policy, New York law should be employed.

New York case law overwhelmingly rejects enforcement of any non-solicitation provision in the absence of a clear showing of trade secrets or confidential information entitled to protection. The state of the law, as set forth in Investor Access Corp. v. Doremus & Co., Inc., 186 A.D.2d 401, 402, 588 N.Y.S.2d 842 (1st Dept 1992), is instructive:

> The leading case in this area is Reed. Roberts Assoc. v. Strauman 40 N.Y.2d 303, 386 N.Y.S.2d 677, 353 N.E.2d 590, which this court construed in Gaynor & Co. v. Stevens 61 A.D.2d 775, 402 N.Y.S.2d 398, to render an agreement not to "'solicit, divert or take away' any of plaintiff's customers * * * unenforceable as a matter of law against a former employee unless (1) his services were 'unique' or 'extraordinary', or (2) to prevent his disclosure or use of trade secrets or confidential information (Reed, Roberts Assoc. v. Strauman supra [40 N.Y.2d] Travelex. 308 [386 N.Y.S.2d 677, 353 N.E.2d 590] )" (see also, Garfinkle v. Pfizer. Inc., 162 A.D.2d 197. 556 N.Y.S.2d 322).The Appellate Division, Second Department adopted this reasoning in Greenwich Mills Co. v. Barrie House Coffee Co. 91 A.D.2d 398, 459 N.Y.S.2d 454, which contains an informative

15

> discussion of the competing policy considerations in this area (91
> A.D.2d at 400, 459 N.Y.S.2d 454), and of the application of the
> ruling in <u>Reed, Roberts</u>, supra, to various situations. The opinion
> concludes that even a mere nonsolicitation agreement, otherwise
> reasonable in scope, is unenforceable as a matter of law unless
> necessary to protect trade secrets of the former employer (91 A.D.2d
> at 402- 403, 459 N.Y.S.2d 454).

Id. At 402-403, 588 N.Y.S.2d at 843-44 [emphasis added]. See also <u>Business Networks of New

York, Inc. v. Complete Networks Solutions, Inc.</u>, 265 A.D.2d 194, 696 N.Y.S.2d 433 (1st Dept.

1999):

> . . Nor does the restrictive covenant against the soliciting of
> plaintiff's customers or prospects for one year after leaving plaintiff s
> employ, signed by one of the individual plaintiffs, warrant injunctive
> relief, since such covenants, disfavored by the law (<u>Columbia Ribbon
> & Carbon Mfg. Co. v. A-1-A Corp</u>., 42 N.Y.2d 496, 499, 398
> N.Y.S.2d 1004, 369 N.E 2d 4). are only enforced to the extent
> necessary to prevent the disclosure or use of trade secrets or
> confidential information (id.), the probable existence of which is not
> shown here, or where the employee's services are unique or
> extraordinary (id.), here not alleged to be the case.

Id. at 194-195, 696 N.Y.S.2d at 43 5 [emphasis added].  As discussed above, the

customer list of Travelex does not constitute a trade secret, (<u>Leo Silfen v. Cream</u>, 29 N.Y.2d 387,

394 (1972) (refusing to apply trade secret status to customer lists, finding that, "Although

plaintiff's have demonstrated an investment of time and money in developing a patronage of

approximately 15,000 enterprises, the investment was not an attempt to create a new market for a

new type of service…[r]ather, that investment reflected simply widespread canvassing of an

obvious and highly competitive market") nor does Travelex even allege that Morbey's skills are

unique or extraordinary (<u>AM Medical Communications Group v. Kilgallen</u>, 261 F.Supp.2d 258,

264 (S.D.N.Y. 2003) (special and unique services generally categorized as dependant on special

talents including musicians, professional athletes and actors.)  As such, the non-solicitation is not enforceable under New York law.

In addition to public policy requiring the application of New York law, New York has significant contacts with the issue to be determined as "New York ... is a financial capital of the world, serving as an international clearing house and market place for a plethora of international transactions" and the matter concerns a New York City resident, working in New York City in the foreign exchange market. Wells Fargo Asia Ltd. v. Citibank, N.A., 936 F.2d 723, 726 (2d Cir.1991) quoting J. Zeevi and Sons, Ltd. v. Grindlays Bank (Uganda) Ltd. 37 N.Y.2d 220, 227, 371 N.Y.S.2d 892 (1975).  Further, Travelex's choice to bring this action in New York ignoring its own choice of forum provision which cites exclusive jurisdiction in Ontario, Canada, may be deemed a waiver of its Ontario choice of law provision. Cargill at 55 citing Walter E. Heller supra at 52 (2d Cir.1984 ("even where the parties include a choice-of-law clause in their contract, their conduct during litigation may indicate assent to the application of another state's law")

> **2.  THE CONFIDENTIALITY AGREEMENT IS UNENFORCEABLE UNDER ONTARIO LAW AS THERE WAS A SIGNIFICANT CHANGE IN MORBEY'S EMPLOYMENT FOLLOWING THE EXECUTION OF THE CONFIDENTIALITY AGREEMENT**

Even under Ontario law the Confidentiality Agreement is unenforceable as Morbey's change in position at Travelex represents a dramatic change in the circumstances of her employment. Sawko v. Fosco Canada Ltd. (1987), 15 CCEL 309 (Ont. Dist. Ct.) (Rights of termination under original employment agreement deemed abandoned due to dramatic change in the employment positions.)

The Confidentiality Agreement annexed to Travelex's motion was executed on September 3, 2002 at the commencement of Morbey's employment at Travelex as a regional account manager ("RAM").  The offer of employment signed on the same date noted that her

employment was probationary for a three-month period.  At the end of the probationary period the RAM position was eliminated and Morbey was offered a completely new and unrelated employment opportunity, that of corporate trader, in a completely different department, with different supervisors, responsibilities and pay structure.  Except for the fact that Morbey continued to be employed by Travelex, there was practically no crossover between these two positions.

"[W]here an employee's level of responsibility and corresponding status has escalated so significantly during [her] period of employment it can be concluded that the substratum of an employment contract entered into at the time of [her] original hiring has disappeared or it can be implied that that contract could not have been intended to apply to the position in the company ultimately occupied by [her]".  Lyonde v. Canadian Acceptance Corp., (1983), 3 CCEL 220 (Ont. H.C.J.)

Travelex has only produced a Confidentiality Agreement executed in connection with the original, probationary, RAM position.  It cannot be said that the Confidentiality Agreement was executed with the contemplation of Morbey's future employment as a corporate trader after the RAM position was eliminated.  This agreement has been "overtaken by events and [is] no longer in force".  Sharpe v. Computer Innovations Distribution Inc. (1993) 1 CCEL (2d) 28) (A "standard form" employment agreement ceased to be effective when the employee ceased to hold the position specified in the contract-even though the specified position in the form agreement was left blank.)  (Sawko v. Fosco Canada Ltd., supra) (An employment agreement was unenforceable since the plaintiff was no longer a "fledgling engineer" but had moved to a position of importance in the employer's organization.)

3.     **THE CONFIDENTIALITY AGREEMENT IS UNENFORCEABLE UNDER ONTARIO LAW AS IT IS TOO BROAD**

Under Ontario, as well as New York law, a restrictive covenant is unenforceable if it is too broad.  Madison Chemical Industries Ltd. v. Walker, [2000] O.J. No. 1125; Columbia

18

Ribbon & Carbon Mfg. Co., Inc. v. A-1-A Corp., 42 N.Y.2d 496, 499, 369 N.E.2d 4 (1977)  The

Confidentiality Agreement, Section 2.1, seeks to prohibit Morbey from soliciting or attempting

to solicit "the business of any customer/client of the Company with whom Leighanna dealt with

[sic] on behalf of the Company during the one year prior to the last day of Leighanna's

employment with the Company." (emphasis added).  The undefined term "dealt with" is

improperly broad and, hence, unenforceable.

      Travelex has noted 300 accounts assigned to Morbey which they claim to be subject to

this restriction.[2]  Yet, as described by Morbey, only 75 to 80 of the accounts actually did

business with Travelex within the year before her resignation.

      Travelex seeks to further broaden the scope of the non-solicitation by including those

customers with whom Morbey had contact while at Travelex. Travelex explains that Morbey,

and the other corporate traders, cover each other's accounts when the regular representative is

unavailable.  However, while Travelex states its need for the non-solicitation injunction so that a

new corporate trader can gain the same level of rapport and knowledge with Morbey's customers

as she allegedly had, these other customers were already being serviced by other corporate

traders which, ostensibly, continue have such relationships with their own accounts.  This is not

enforceable as it is too broad and seeks to protect Travelex from competition, not its legitimate

proprietary interests.

      This broad list of customers could number in the thousands as eight people worked at

Morbey's station.  Morbey will never be sure who is on the restricted list as she would have no

knowledge of every customer call that she may have covered during an entire year.

      Where the scope of the proprietary interest protected by a non-solicitation provision is

too broad, such provision will not be enforceable.  In Syntax Systems Ltd. v. Mid-Range

Computer Group Inc. 2003 CarswellOnt 3513, O.J. No. 3684, the Canadian court found that a

non-solicitation clause that applied to any customer at any time or at any place regardless of

---

[2] Morbey's recollection was that the book of accounts was approximately 250.

whether the employee had any meaningful contact with that customer or even knew of its existence was fatally flawed.  Syntax Systems Ltd.  The Canadian courts have also found that a non-solicitation clause that included every customer in the company's database was too broad. Madison Chemical Industries Ltd. v. Walker, 4 CCEL (3d) 133 [2000] O.J. No. 1125.  In the decision of 947535 Ontario Ltd. (c.o.b) H&R Block v. Jex, [2003] O.J. No. 3290, the non-solicitation provision stated that "customers" included those who were serviced by the employee or with whom the employee became acquainted by reason of access or knowledge of information gained while employed by the company.  The court found clause too broad because it included clients that the employee had never worked with, including potential clients.

Accordingly, the restriction from soliciting any customer that Morbey "dealt with" is too broad and the Confidentiality Agreement will not be enforced.[3]

### 4.    IF THE CONFIDENTIALITY AGREEMENT IS UNENFORCEABLE MORBEY IS NOT RESTRICTED FROM SOLICITATION OF CUSTOMERS UNDER BOTH NEW YORK LAW AND ONTARIO LAW

If the Confidentiality Agreement is unenforceable the Court will not apply the agreement's choice-of-law provision to any remaining claims of Travelex.  To the extent that a conflict exists between New York and Ontario law in addressing any remaining claims the Court will apply the applicable choice-of-law analysis.  However, as neither jurisdiction would enjoin Morbey from soliciting Travelex's customers, no such analysis is necessary.

Under New York law, absent an enforceable restrictive covenant or disclosure of trade secret, an employee should not be enjoined "in fair and open competition with [her] former employer." Leo Silfen supra at 395. (Also see Production Resource Group, L.L.C. supra at *15

---

[3] The Court should also be made aware of the conflicting definitions contained in the Confidentiality Agreement.  Section 1 defines Confidential Information and Trade Secret separately.   Included with the definition of Trade Secret under Section 1.1(2) is "list of actual or potential customers".  Yet, Section 1.3 includes "Customers/client lists, lists or prospective customers/clients…" within the ambit of Confidential Information.  It should be further noted that deeming potential customers as a trade secret or confidential is unenforceable.

finding no likelihood of success having failed to show protectable trade secrets or enforceable restrictive covenant); (Reed. Roberts Assoc. supra.)

Under Ontario law, with no enforceable non-solicitation covenant, Morbey is free to solicit Travelex's customers on the basis that she is not a fiduciary of Travelex. The courts have considered the following characteristics when attempting to determine whether someone is a fiduciary; (i) scope for the exercise of some discretion or power; (ii) whether the individual can unilaterally exercise that power or discretion so as to affect the beneficiary's legal or practical interests; and (iii) the beneficiary is peculiarly vulnerable to or at the mercy of the fiduciary holding the discretion or power. International Corona Resources Ltd. v. LAC Minerals Ltd.. [1989] 2 S.C.R. 574; Frame v. Smith, [1987] 2 S.C.R. 99.

Being an employee does not in itself render an employee to be a fiduciary. In determining whether an employee is a fiduciary, the court will analyze the employee's position. An officer or manager will not be saddled with a fiduciary duty unless the position he/she occupies contains the power and the ability to direct and guide the affairs of the company. R.W. Hamilton v. Aeroquip Corp. (1988), 65 O.R. (2d) 345 (Ont. H.C.)

Generic relationships between employer and employee do not per se give rise to fiduciary responsibilities. The relationship becomes elevated to the fiduciary level when the employer reposes trust and confidence in the employee on a continual basis relying upon the employee in reaching business decisions. It is the trust and reliance transferred by the employer which gives the employee the power and in some cases the discretion to make business decisions on the employer's behalf. (Sure Grip Fasteners Ltd. v. Allgrade (1993), 45 CCEL 276 (Ont. Ct. Gen. Div.) at para 28.

Investment advisors and salespeople who do not exercise a management function or make business decisions have been recognized as not owing a fiduciary duty to their employer. As corporate trader, Morbey is not a fiduciary. Sure Grip Fasteners Ltd. v. Allgrade at para 29;

RBC Dominion Securities v. Merrill Lynch, 2007 CarswellBC 46; IT/Net Inc. v. Doucette
(2005), 5 B.L.R. (4th) 71 (Ont. S.C.J.) at para. 18.

Non-fiduciary employees have the right to compete with their former employer and to
solicit clients of their former employer. In the decision of Imperial Sheet Metal Ltd. supra at
para. 34 the court held that:

> Once the employment relationship ends, the non-fiduciary employee is
> permitted to engage in fair competition with a former employer…The
> right to compete includes the right to solicit the customers of the former
> employer "whose names and addresses he has learned during the period of
> his service".

See also Imperial Sheet Metal Ltd. at para. 4 and 43.  (An employee should not be
held liable in damages for having successfully solicited customers of a former employer
because of the goodwill fostered during the currency of the employment relationship.
Such a broad definition of confidential information conflicts with the common law right
of a former employee to compete with their former employer and, as well, the right to
solicit the same customers.)

Where there is a clash between the interests of former employers in protecting
their business interests and the interests of former employees in earning a living, it is the
interests of the former employee that generally prevail.  Imperial Sheet Metal at para 37;
Barton Insurance Brokers Ltd. supra at para 39.

### 5.    MERE CONTACT WITH CUSTOMERS DOES NOT CONSTITUTE SOLICITATION

Ontario courts have held that solicitation requires evidence of positive acts of soliciting.
Atlantic Business Interiors Ltd. v. Hipson [2005] N.S.J. 33 at para 101. In Syntax Systems Ltd,
supra, solicitation was defined to include a positive act on behalf of an employee and an
imposition of some type of pressing demand.  The court held that a "mere conversation and an

introduction to other staff does not amount to pressing demand". <u>Syntax Systems Ltd v. Mid-Range Computer Group Inc.</u> supra at para 36. Courts in the United States attach similar requirements. <u>Dole v. United Steelworkers of America</u>, 494 U.S. 26, 50, 110 S.Ct. 929 (1990). ("The word 'soliciting' would appear to mean something beside "obtaining" and is commonly understood as including a request for another person to perform some act.")

Morbey has noted that any customers with which she is currently doing business came to AFEX out of the customer's request, not Morbey's. Morbey had developed personal relationships with several of her customers and socialized with them outside of work. She had also brought customers to Travelex whom she met outside of the work environment. Morbey's simple notification to these customers that she left Travelex prompted them to ask her to send them information about AFEX. Such actions do not constitute solicitation and should not be restrained.

### 6.    TRAVELEX CANNOT ESTABLISH A CLAIM FOR TORTIOUS INTERFERENCE AGAINST AFEX

A claim for tortious interference with contract requires (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) an international act by the defendant with the purpose of inducing the third party to breach the contact; and (4) damages resulting from the breach of contract. <u>Imtrac Industries, inc. v. Glass export Company Ltd.</u>, 1996 WL 39294 *7 (S.D.N.Y.)

The third element requires more than an intentional act, but an "'improper intentional interference with [] performance'" of an existing contract" <u>Imtrac Industries</u> at *8 quoting <u>Enercomp, Inc. v. McCorhill Publishing, Inc</u>., 873 F.2d 536 (2d Cir.1989). This requires the defendant's action to have been "motivated by malice toward the plaintiff rather than by the preservation of its own economic interest…" <u>American Protein Corporation v. AB Volvo</u>, 844

F.2d 56, 63 (2d Cir. 1988) quoting <u>Felsen v. Sol Café Mfg. Corp.</u>, 24 N.Y.2d 682, 686-87, 301 N.Y.S.2d 610 (1969).  The Second Circuit explained that so long as the defendant had a genuine business interest in interfering in the contract, no malice will be found and a tortious interference claim will not lie.

Even if Travelex can establish that AFEX knew of the Confidentiality Agreement and intentionally requested Morbey to breach that agreement, proof of which Travelex has not offered, the mere fact that AFEX did so to increase sales satisfies the "economic interest" test and any tortious interference will fail.

New York courts have also refused to find tortious interference by a new employer in hiring an employee in violation of an employee's covenant not to compete when there was alleged disclosure of trade secrets and confidential information which amounted to no more than knowledge of business practices and identities of customers which were readily ascertainable from sources outside of the plaintiff's business.  <u>Howard Systems International, Inc. v. IMI Systems Inc.</u>, 192 A.D.2d 371, 596 N.Y.S.2d 48 (1st Dept 1993) finding that the employee should not be prohibited from using her knowledge and talent in her area of expertise.

Morbey has gained certain general knowledge in connection with the foreign exchange arena and neither she nor AFEX are liable to Travelex for her use of that knowledge or knowledge of the identity of Tavelex's customers which identities are readily ascertainable form outside sources.

## C.    THE BALANCE OF HARDSHIPS WEIGHS <u>IN FAVOR OF DENYING THE MOTION</u>

When considering the potential harm to an employer and its former employee in connection with ordering restraints on solicitation the court generally looks to the potential losses to the employer if the injunction is not issued and to the former employee if its is issued.  While

the employer may face certain losses, the inability of the employee to earn a living is generally considered a greater hardship. Consolidated Brands, Inc. v. Mondi, 638 F.Supp 152 (E.D.N.Y.1986)

Travelex seeks to prohibit Morbey from soliciting thousands of Travelex customers. Yet, of the customers in Morbey's account, most did no recent business with Travelex. The remaining customers represent companies with which Morbey had almost no connection and no working knowledge of their identity.

In Iron Mountain Information Management, Inc. v. Taddeo, 455 F.Supp.2d 124, 141 (E.D.N.Y. 2006) the court was faced with a similar situation. The court found that since the employee's ability to earn an income was directly tied to his ability to solicit customers for his new employer, such a restraint would impede his ability to function as a salesman. It further considered that of the 1,500 customers at issue, which had initially been obtained from cold calling off of a lead list, that the employee, now making cold calls off of a lead list, may inadvertently contact those prohibited customers. The requirements of cross-checking each name on the lead list would constitute a hardship in carrying out his job.[4]

Of further consideration are those few customers, who have personal relationships with Morbey, that are now doing business on a non-exclusive basis with AFEX. It will not be a hardship to Travelex if AFEX continues to transact their trades as any prior relationship Travelex claims is already gone. This would only serve to harm Morbey and AFEX with no benefit to Travelex. Travelex, of course, is free to solicit these customers to gain their business.

## IV.    CONCLUSION

It is respectfully submitted that the relief requested in the Order to Show Cause in the form of a Temporary Restraining Order be denied, and for such other and further relief as this Court may deem just and proper.

---

[4] This finding resulted despite the fact that it was admitted by defendant that he solicited orders away from his former employer while still under its employ.

Dated: New York, New York
       November 29, 2007

CYRULI SHANKS HART & ZIZMOR LLP

By: _____/s/_____
     Russell Shanks, Esq.
     Jeffrey C. Ruderman, Esq.
Attorneys for Defendants
Leighanna Morbey and
AFEX-Associated Foreign Exchange, Inc.
420 Lexington Avenue-Ste 2320
New York, New York 10170
(212) 661-6800