Steven M. Post, Esq.
Donna Marie Werner, Esq.
Aime Dempsey, Esq.
Epstein Becker & Green, P.C.
250 Park Avenue
New York, New York  10177
(212) 351-4500
*Attorneys for Plaintiff Travelex Canada Ltd*

UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X     Case No.: 9747 cv. 07 (JBD)

TRAVELEX CANADA LIMITED,

                          Plaintiff,

- against -

LEIGHANNA MORBEY and
AFEX-ASSOCIATED FOREIGN EXCHANGE, INC.

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY AFFIDAVIT OF
RHONDA POWER IN
SUPPORT OF THE
PLAINTIFF'S MOTION
FOR INJUNCTIVE RELIEF**

        RHONDA POWER, being duly sworn, deposes and says:

        1.      I am employed as Corporate Trader Manager by Travelex Canada Limited

("Travelex").  In that capacity, I am fully familiar with all the facts and circumstances set forth

herein, either by personal knowledge or by review of Travelex's records, except for those items

stated to be alleged upon information and belief.

        2.      This Reply Affidavit is respectfully submitted in further support of

plaintiff Travelex's motion for a temporary restraining order and a preliminary injunction barring

the continued solicitation of Travelex clients and dissemination of Travelex confidential and

trade secret information by defendants Leighanna Morbey ("Morbey") and AFEX-Associated

Foreign Exchange, Inc. ("AFEX") in violation of an employment agreement and non-solicitation

agreement executed between Travelex and Morbey, and in reply to the Affidavit of Leighanna
Morbey in Opposition to Order to Show Cause ("Morbey Aff.").

      3.    Morbey's Affidavit misstates and misrepresents the facts. Moreover, she
clearly is attempting to confuse the Court by referring to the customer base of the Travelex
Group. The number of customers of the Travelex Group is irrelevant. The relevant issue here is
Morbey's possession and use of information related to customers of Travelex Canada Limited to
breach her Non-Solicitation Agreement.

      4.    At the outset, it should be noted that Morbey does not dispute that she
contacted customers of Travelex and solicited business from them. This is a direct violation of
her Non-Solicitation Agreement.

      5.    Morbey had one of the largest books of business, in terms of number of
clients within a portfolio, for Travelex Canada Limited. In the year before her employment
ended, she conducted trades for 354 customers, of which 243 were in her book of business or
portfolio. The remaining 111 clients were in other trader's portfolios but Morbey took the call
and conducted the trade for those clients. While for some of the clients she may only have
conducted a single trade, for the majority she conducted multiple trades. Indeed, for one
customer alone she conducted over 350 trades in her last year with Travelex Canada Limited
(hereinafter "Travelex").

      6.    Morbey's assertion that she is not in possession of a client or customer list
rings hollow in light of the admissions in her affidavit and her actions since becoming employed
by AFEX. Morbey concedes that she copied and retained what she refers to as her "personal
contact information." (Morbey Aff at ¶ 6). Travelex's internal investigation revealed that
Morbey printed her entire email contact list. Attached at Exhibit A is a copy of that list.

Moreover, the emails that she sent to Travelex clients after she joined AFEX contain specific

customer detail that she could only have known by having her contact list, this information is not

available through an internet search. For example, one such contact worked within one of the

largest universities on the US West coast: Morbey contacted her specifically in regards to

Foreign Exchange opportunities, stating that she "enjoyed working with her while at Travelex

and welcomed the opportunity to continue their relationship" now that Morbey was "with

AFEX." This particular client was considered a risk by Travelex for various reasons, including

due to current margin structure, and Morbey would have been aware of this. Specifically, this

much valued client was in the portfolio of her fellow trader who sat next to her; he was to leave

Travelex in September to begin a different career path and Morbey knew this as well. Morbey

used this information above in an effort to secure a 'quick win' within her new organization.

       7.     Morbey would have this Court and Travelex believe that she was able to

contact Travelex's clients either because she recalled their contact information or because she

was able to obtain that information from publicly available sources. This is not credible. One of

the Travelex clients to whom Morbey sent an email soliciting business was in another trader's

portfolio and Morbey only conducted one trade with that client in her last year of employment.

The only conceivable way in which Morbey could have this client's contact information is

because she took it when she left Travelex, as evidenced by the list attached at Exhibit A.

       8.     Morbey's assertion that she cut and pasted her email contact list in plain

view also is misleading. A large part of Morbey's work as a trader was conducted via email and

required the constant use of her computer. Therefore, it would not have raised suspicion if she

was observed using her Outlook. However, the positioning of Morbey's desk would have

enabled her to do so without being observed. While she sat next to another trader, no one sat

- 3 -

behind her. More importantly, no one is looking over the trader's shoulders as they conduct their work; like all traders she had a 'dealer limit' and could negotiate and conduct trades up to that level by either fax, email or telephone. Morbey also could have cut and pasted or downloaded her contact information while the only dealer who sat next to her was at lunch. When she did it, however, is irrelevant. The fact is that Travelex conducted an internal audit investigation of her systems, including internet and email, during her last days of employment - - of which Morbey was not aware - - and confirmed for itself that she had improperly printed her contact information. Indeed, she concedes that she did so.

9.      Morbey's description of her employment history with Travelex is inaccurate. Morbey was hired on September 3, 2002 as a Regional Account Manager. That position was related to the positions of Corporate Trader, Corporate Dealer and Dealer Sales. Like most large corporations, Travelex frequently changes the titles of various positions and consolidates related positions and departments. That is all that happened with Morbey.

10.      In January 2003, the regional Account Manager and Corporate Account Manager titles were discontinued. Most of those employees who held those titles, including Morbey, were reassigned to the trading/dealer role. However, the key performance indicators and responsibilities of the employees remained largely unchanged. For both roles, each individual was responsible for financial and non-financial targets, i.e. Daily/monthly/annual targets assigned to each account, attrition percentage, number of inbound and outbound calls. All of this information was tracked to ensure positive trading and management activity and to track results for compensation purposes. Both the Regional Account Manager position and the dealer/trader roles are sales based and require extensive customer contact.

11.     The RAM and CAM roles (Regional Account Manager and Corporate Account Manager) were a 'pilot' service model that was eventually dissolved. The CAM roles were filled with previous traders who would eventually return to entering deals: while RAM's or CAM's did not enter trades, they were responsible for managing the client and any related opportunities (RAM = SME or small, medium enterprise opportunities, CAM = larger, higher value accounts). As it had always been the responsibility of the dealer to both manage the relationship in addition to affecting trades, the service model was re-adjusted. Morbey, who was recently hired and still essentially in training, was transitioned into the dealing role. As she had no prior experience with dealing (affecting trades), she was extensively trained for that skill set. The move was entirely and explicitly lateral in nature within the same (Trading) department. All salaries, including Morbey's, remained the same. In addition, she continued to be bound by the Non-compete/Non-Solicitation Agreement that she had signed at the time of her employment.

12.     The Agreement on Confidentiality and Non-Solicitation ("The Non-Solicitation Agreement") executed by Morbey was not in consideration for or connected to the offer to employ her in a particular position. It was in consideration for and a condition of her employment in any position with Travelex. It is irrelevant, therefore, whether or not she received a new offer letter when she was transitioned from her position as a Regional Account Manager to a corporate trader.

13.     Notably, the Non-Solicitation Agreement states that Travelex "wishes to employ [Morbey]" and Morbey "wishes to accept that employment." Nothing in the Non-Solicitation Agreement limits it to the time in which Morbey holds a particular title. Indeed, the Agreement refers to the confidential information that Morbey will receive and be privy to "during the course of her employment." (Section 3.1) That information is defined to include

- 5 -

customer or client contact lists, pricing structure and any information provided to Travelex or Morbey in confidence by Travelex's clients or customers and "any other information made available to [Morbey] *during the course of [Morbey's] employment*" which is specifically identified as being confidential.

14.     Morbey's assertion that Travelex made no effort and had no system to ensure the confidentiality of its customer list is incorrect. Travelex's Customer Relations Management System Sales force is strictly monitored. No outside sales individuals who are employed by Travelex have access to information on any clients other than their own. Corporate Dealers, like Morbey, however, do have this information because they act as a team and facilitate trades for one another. They are required to maintain the confidentiality of this information. Any use of client names in publications or as references is done sparingly and only with the prior approval of the client.

15.     Moreover, that potential clients or customers could be identified by conducting an internet search is irrelevant. Morbey's Non-Solicitation Agreement explicitly prohibits her from contacting or soliciting business from any Travelex client with whom she dealt in her last year of employment. That she may have been able to locate the contact information in publicly available sources does not negate her obligations under the Non-Solicitation Agreement.

16.     It also is irrelevant whether or not the Travelex customers had an exclusive trading agreement with Travelex. Morbey is wrong, however, when she states that price is the only issue for customers.

17.     Travelex builds relationships with its customers and often provides services to a customer even where Travelex's fees are not the lowest. While a new customer

may continue to bid with competitors and look for the lowest fee, the goal of Travelex, and its corporate traders including Morbey, is to build a working relationship with the customer so that Travelex becomes the client's partner in international payments and the sole provider for that client of foreign exchange. In fact, Morbey admits this at paragraph 19 of her affidavit.

18.    Morbey's assertion that she did not have any relationship with clients of other traders and could not provide the name of these entities is to say the least incredible. As noted above, Morbey solicited business from a client in another trader's portfolio and specifically referenced her prior relationship with that company. It is significant that in the year prior to the termination of her employment, Morbey conducted only one trade for this customer. Her assertion that she could not name clients of other traders is further proof that she is in possession of a client list.

19.    Moreover, she contradicts this assertion by then claiming that without a client list, she remembered client names (including the name of another trader's client for whom she conducted one trade) and searched the internet for contact information. Even assuming that this is true, how she obtained the contact information is irrelevant. Morbey has admitted that she violated her Non-Solicitation Agreement. *See* Paragraphs 22-23 of Morbey Aff. That she claims to have developed personal relationships with some of her Travelex clients does not change the fact that they are Travelex clients and she is prohibited from soliciting business from them.

20.    Equally incredible is her assertion that she had no intimate knowledge of how Travelex's business worked. Morbey was employed with Travelex for over five years. During that time she regularly processed trades for client in her own portfolio and in other trader's portfolios. She did this using Travelex's proprietary systems. When she was

transitioned to the trader position she was trained in these systems and in how to facilitate trades by calculating rates.

21.    The terms of Morbey's Non-Solicitation Agreement are clear and reasonable. She is prohibited for one year from soliciting business from any customer with whom she dealt in her last year of employment. By her own admission she has breached her Non-Solicitation Agreement.

WHEREFORE, for the reasons stated above and in my initial affidavit, I respectfully request that this Court grant Travelex's motion for a temporary restraining order and for a preliminary injunction, and issue an order preventing Morbey from soliciting Travelex clients and preventing Morbey and/or AFEX from using Travelex's confidential information.

_____
RHONDA POWER

Sworn to before me this
18ᵗʰ day of December, 2007

_____
Notary Public



- 8 -